**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094<br><br>THIS DOCUMENT RELATES TO ALL CASES<br><br>JUDGE KAREN SPENCER MARSTON |
| ERIK CORTEZ,<br>          Plaintiff,<br><br>v.<br><br>NOVO NORDISK A/S, NOVO NORDISK, INC., ELI LILLY and COMPANY, and LILLY USA, LLC,<br>          Defendant(s). | COMPLAINT AND JURY DEMAND<br><br>CIVIL ACTION NO.: 2:25-cv-07418 |

**SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff named below, by and through the undersigned counsel, file(s) this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff adopts and incorporates by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such *Master Complaint*, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff files this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

## IDENTIFICATION OF PARTIES

**Plaintiff(s)**

    1.    Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s):        Erik NMN Cortez        .

    2.    If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim:        N/A        , as _____ of the estate of _____, deceased.

    3.    If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s):        N/A        .

    4.    If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services:        N/A        .

**Defendant(s)**

    5.    Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

          X   Novo Nordisk Inc.

          X   Novo Nordisk A/S

          X   Eli Lilly and Company

          X   Lilly USA, LLC

        _____ other(s) (identify): _____

## JURISDICTION AND VENUE

6.      City and state of Plaintiff's current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

Plaintiff is a citizen of the United States, a citizen of the State of Texas, and a resident of the city of San Antonio, Texas.

7.      State where Plaintiff was prescribed the GLP-1RA Product(s) at issue:

Plaintiff's physician(s) prescribed Ozempic and Trulicity that were used by Plaintiff in Texas.

8.      State of Plaintiff's residence at time of his use of the GLP-1RA Product(s) at issue:

Plaintiff was a citizen of the State of Texas at the time of his GLP-1 RA use.

9.      City and state of Plaintiff's residence at time of diagnosis of injury:

Plaintiff resided in San Antonio, Texas at the time of his diagnosis of his injur(ies).

10.     Jurisdiction is based on:

    X    diversity of citizenship pursuant to 28 U.S.C. § 1332

_____    other (plead in sufficient detail as required by applicable rules):

_____

_____

11.     The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

United States District Court for the Western District of Texas

12.    Venue is proper in the District Court identified in Paragraph 11 because:

    __X__    a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

    _____    other (plead in sufficient detail as required by applicable rules):

    _____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

N/A_____

**PRODUCT USE**

14.    Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are being asserted in this case (check all that apply):

    __X__    Ozempic (semaglutide)

    _____    Wegovy (semaglutide)

    _____    Rybelsus (oral semaglutide)

    _____    Victoza (liraglutide)

    _____    Saxenda (liraglutide)

    __X__    Trulicity (dulaglutide)

    _____    Mounjaro (tirzepatide)

    _____    Zepbound (tirzepatide)

    _____    Other(s) (specify): _____

4

15.     To the best of Plaintiff's knowledge, Plaintiff used GLP-1 RA Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple products, specify date range(s) for each product):

> Plaintiff used Ozempic from in or about August 2019 through May 2023. Plaintiff used Trulicity from in or about October 2023 through in or about November 2023.

## . __INJURIES AND DAMAGES__

16.     To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s), Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

_____ Gastroparesis

__X__ Other gastro-intestinal injuries (specify):

> Abdominal pain, nausea and vomiting, exacerbated gastroesophageal reflux disease (GERD),

_____ Ileus

_____ Ischemic Bowel/Ischemic Colitis

__X__ Intestinal Obstruction

_____ Necrotizing Pancreatitis

_____ Gallbladder Injury (specify): _____

_____ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

__X__ Additional/Other(s) (specify): Dehydration, acute kidney injury

5

17.     Plaintiff's injuries occurred in approximately (month and year)?

<u>After beginning Ozempic in or about August 2019, Plaintiff began suffering from</u>
<u>abdominal pain, nausea and vomiting, and exacerbated gastroesophageal reflux</u>
<u>disease (GERD). Plaintiff was hospitalized in January 2024 and treated for a small</u>
<u>bowel obstruction, acute kidney injury, nausea and vomiting and dehydration.</u>

18.     In addition, as a result of Plaintiff's use of GLP-1 RA Product(s), Plaintiff suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

   X   Injury to self

_____ Injury to person represented

   X   Economic loss

_____ Wrongful death

_____ Survivorship

_____ Loss of services

_____ Loss of consortium

_____ other(s) (specify): _____

## CAUSES OF ACTION

19.     In addition to adopting and incorporating by reference the *Master Complaint* as stated above, more specifically, Plaintiff hereby adopts and incorporates by reference the following Causes of Action and allegations asserted in the *Master Complaint* (check all that apply):

   X   Count I:     Failure to Warn – Negligence

   X   Count II:     Failure to Warn – Strict Liability

6

   X    Count III:   Breach of Express Warranty/Failure to Conform to Representations

   X    Count IV:   Breach of Implied Warranty

   X    Count V:   Fraudulent Concealment/Fraud by Omission
                     *See* Exhibit "A" regarding Count V

   X    Count VI:   Fraudulent/Intentional Misrepresentation
                     *See* Exhibit "A" regarding Count VI

   X    Count VII:   Negligent Misrepresentation/Marketing

   X    Count VIII: Strict Product Liability Misrepresentation/Marketing

   X    Count IX:   Innocent Misrepresentation/Marketing

   X    Count X:   Unfair Trade Practices/Consumer Protection (see below)
                     *See* Exhibit "B" regarding Count X

   X    Count XI:   Negligence

   X    Count XII:   Negligent Undertaking

   X    Count XIII: State Product Liability Act ("TPLA") (see below)

       Count XIV: Wrongful Death

       Count XV: Loss of Consortium

       Count XVI: Survival Action

       Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

_____

20.     If Plaintiff is asserting a claim pursuant to the unfair trade practices or consumer protection statutes of any jurisdiction as identified in Count X above:*

      a.   Indicate the specific statute (including subsections) under which Plaintiff is bringing such claims:

          The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") is codified under Chapter 17 of the Texas Business & Commerce

Code with key sections outlining prohibitions against false, misleading, and unconscionable actions to protect consumers. Plaintiff brings claims under V.T.C.A., Bus. & Com. Code Ann. §§ 17.41, et seq. (Texas DTPCA), including but not limited to Sec. 45 – Definitions; Sec. 17.46 - Deceptive Trade Practices Unlawful, including subparts 17.46(b), 2, 5, 7, 9, and 24; and Sec. 17.50. - Relief for Consumers which allows Plaintiff to recover both economic and mental anguish damages. Additionally, see Plaintiffs' *Master Complaint*, Count X, paragraphs 850-865. Defendants misled consumers and Plaintiff's physician regarding the safety and risks associated with the use of their GLP-1 RA Product(s) by overstating the benefits and downplaying the risks from using their products. Plaintiff incorporates Exhibit "B."

b.  Identify the factual allegations supporting those claims (by subsection, if applicable):

Defendants misled consumers regarding the safety and risks associated with use of their GLP-1 RA Product(s) by overstating benefits and understating risks from using the Product(s). While various avenues were used by both the Eli Lilly and Novo Nordisk Defendants, each of them promoted their GLP-1 RA Products using direct-to-consumer marketing methods, especially through television commercials. As an example, although not approved for weight loss at the time, the Trulicity advertising "Do More" campaign includes an overweight firefighter announcing the medication is available in an easy-to-use pen and that "I may even lose a little weight" but omits and/or downplays the medication's risks. Another Trulicity-related commercial states "it gets my

8

body to release insulin—like it's supposed to," but includes no information

regarding delayed gastric emptying. Novo Nordisk promoted its Ozempic

through the "Oh, Oh, Oh" television commercials which touted promises of

weight loss while stating there was "no increased risk." These commercials

promoted promises of weight loss while informing potential users there would

be "no increased risk," providing consumers, including Plaintiff, a sense of

security. Plaintiff incorporates Exhibit "B."

*\* Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.*

21.    If Plaintiff is asserting a claim pursuant to the Product Liability Act ("PLA") of

any jurisdiction as identified in Count XIII above:*

    a.    Indicate the specific statute (including subsections) under which Plaintiff is

        bringing such claims:

        The Texas Products Liability Act ("TPLA") is codified at Tex. Civ. Prac. Rem.

        Code §§ 18.0001, et seq. Plaintiff brings claims under Sec. 82.001 –

        Definitions, Section 82.004 – Inherently Unsafe Products, Section 82.005 –

        Design Defects, and Section 82.007 – Medicine, and Section 82.008 –

        Compliance with Government Standards.

    b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent

        failure to warn, fraud, etc.) that are subsumed within Plaintiff's PLA claim:

        None                                                                                    .

    c.    Identify the factual allegations supporting those claims:

Defendants as both sellers and manufacturers of the GLP-1 RA Product(s)
produced defective Product(s) that were inherently unsafe and known to be
unsafe to the ordinary consumer, and which Defendants knew could have been
designed to be safer, and that would cause injury as produced and sold.
Defendants also failed to provide adequate warnings or information with regard
to their products and misled consumers, including Plaintiff, as well as
consumers' physicians regarding the safety and risks associated with use of
their GLP-1 RA Product(s) by overstating benefits and understating risks from
using the Product(s). Plaintiff was overweight and was prescribed Ozempic and
Trulicity for treatment of diabetes and weight loss. He was exposed to
advertisements regarding the weight loss advantages of Trulicity and Ozempic
which omitted and/or downplayed the risks of using the medications. Instead,
the ads made statement such as "no increased risk" and "it gets my body to
release insulin-like it's supposed to." Plaintiff discontinued his Ozempic and
then Trulicity after suffering from gastrointestinal difficulties including
abdominal pain, nausea and vomiting, and a small bowel obstruction.

In addition, Plaintiff incorporates the following paragraphs from the *Master
Complaint* (ECF 481) by reference:

Count I:    Failure to Warn – Negligence (paragraphs 606-640)

Count II:   Failure to Warn – Strict Liability (paragraphs 641-674)

Count III:  Breach of Express Warranty/Failure to Confirm to Representations
(paragraphs 675-698)

Count IV:  Breach of Implied Warranty (paragraphs 699-720)

Count V:   Fraudulent Concealment/Fraud by Omission (paragraphs 721-779)

Count VI:  Fraudulent/Intentional Misrepresentation (paragraphs 780-800)

Count VII: Negligent Misrepresentation/Marketing (paragraphs 801-824)

Count VIII: Strict Product Liability Misrepresentation/Marketing (paragraphs 825-848)

Count IX:  Innocent Misrepresentation/Marketing (paragraph 849)

Count X:   Unfair Trade Practices/Consumer Protection (paragraphs 850-865) (see below)

Count XI:  Negligence (paragraphs 866-880)

Count XII – Negligent Undertaking (paragraphs 881-903)

Count XIII: - State Product Liability Acts (paragraphs 904-911)

See also the Factual Allegations Section of the *Master Complaint*.

*\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.*

22.    If pre-suit notice is required by statute, did Plaintiff provide some form of separate pre-suit notice to Defendant(s)?   See Exhibit "B"   .  If so, attach such notice.

## **RELIEF**

Plaintiff prays for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff may be entitled.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all claims triable by jury in this action.


Date:   December 31, 2025            By:   _____

Kristie M. Hightower (LA Bar #31782)
Lundy LLP
501 Broad Street
Lake Charles, LA 70601
khightower@lundyllp.com
T: (337) 439-0707
F: (337)439-0707

*Counsel for Plaintiff*

# EXHIBIT A

**FRAUD SUPPLEMENT - COUNTS V & VI**

1.      Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.      At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

4.      Defendants knew or should have known their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.      Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.      Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

**Count V: Fraudulent Concealment / Fraud by Omission**

7.      Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Risk of Severe GI Injuries: Concealing the true risk of persistent and debilitating gastrointestinal conditions, severe vomiting, and nausea, and cholelithiasis and the need for gallbladder removal.

b.  Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c.  Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d.  Misleading and/or Inadequate Data: Concealing the fact that if the use of Defendants' GLP-1 RA Product is discontinued, blood sugar levels will likely rise, and can even become higher than they were before starting the medication.

e.  "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

f.  "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which

can lead to negative health outcomes.

8.     As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages. Plaintiff justifiably relied on Defendants' misrepresentations and omissions. Plaintiff was ignorant of the facts related to Defendants' Product(s) and did not have an equal opportunity to discover them. If Plaintiff had known the information Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

9.     As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and economic and other losses, including pain and suffering, loss of a normal life, and medical expenses, and is entitled to recover compensatory, exemplary, and/or punitive damages.

## Count VI: Fraudulent / Intentional Misrepresentation

10.     Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off." These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b.  Defendants made misrepresentations to the public and to Plaintiff by airing
the widespread "Oh, Oh, Oh, Ozempic" television commercial, which
falsely created a misleading impression of the drug's safety profile.
Specifically, the commercial represented a character saying, "No increased
risk!" which was an incomplete and misleading statement of safety that
tended to assure viewers the drug was completely safe. Furthermore, while
the commercial mentioned common gastrointestinal (GI) side effects like
nausea and vomiting, it intentionally minimized the risk by failing to clarify
the severe, incessant, and debilitating nature of these symptoms. Defendants
concealed and omitted all mention of serious adverse events they knew or
should have known to be associated with Ozempic use. These omissions
created a deceptive net impression intended to induce consumers to request
the product. Defendants' follow-up television commercials continued the
"Oh, Oh, Oh, Ozempic!" brand theme as well as stating "no increased risk."

c.  Defendants made representations to the public and to Plaintiff by airing
commercials including weight-loss-related content (rather than maintaining
a focus strictly on diabetes treatment) which mislead consumers by
omission and downplaying risks. The "Do More" campaign featured an
overweight firefighter explaining Trulicity comes in an easy-to-use-pen and
that "I may even lose a little weight!" While another campaign states "it
gets my body to release insulin—like it's supposed to," making Trulicity
seem like "the" answer to the diabetic and/or overweight viewer, yet not
adequately covering the risks. Defendants' future campaigns are similar in

that they lack sufficient information regarding risk, yet continue to lean on weight loss, indicating that taking Trulicity can help you "lose up to 10lbs."

d.  Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

11.  Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients both treat diabetes and "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic was a safe, effective, and long-term solution for diabetes and weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs, and Plaintiff was induced to take them.

12.  Had Defendants disclosed the true risks of gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the long-term diabetes treatment and/or weight loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

13.     As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for medical treatment, and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

# EXHIBIT B

## UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT

1.      Plaintiff incorporates by reference the factual allegations in the *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")* and its paragraphs as though set forth fully at length herein.

2.      Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.      Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.      The Texas Deceptive Trade Practices Consumer Protection Act ("Texas DTPA" or the "Statute" ) prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann. § 17.50(a)(3).

5.      The Texas DTPA § 17.46(a), declares unlawful false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

6.      Under Tex. Bus. & Com. Code Ann. § 17.46(b)(2), it is unlawful to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

7.      Under Tex. Bus. & Com. Code Ann. § 17.46(b)(5), it is a deceptive practice to represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

8.      Under Tex. Bus. & Com. Code Ann. § 17.46(b)(5)(7), it is a deceptive practice to represent that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or mode, when they are not.

9. Under Tex. Bus. & Com. Code Ann. § 17.46(b)(9), it is unlawful to advertise goods or services with intent not to sell them as advertised.

10. Under Tex. Bus. & Com. Code Ann. § 17.46(24), it is unlawful to fail to disclose information concerning goods or services known at the time of the transaction if such failure to disclose was intended to induce the consumer into a transaction they would not have entered had the information been disclosed.

11. Plaintiff and/or Defendants are "persons" under the Statute.

12. Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

13. Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

14. Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

15. Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in Texas. In addition, Defendants sold the GLP-1 RA Products to residents of Texas; shipped GLP-1 RA Products to Texas; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in Texas. Defendants' misconduct described herein significantly affected Texas consumers.

16.    As alleged in the *Master Complaint*, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

      a.    Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

      b.    Excessively advertising, marketing, and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

      c.    Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

17.    As described in the *Master Complaint*, including in the paragraphs cited in paragraph 856 of the *Master Complaint* as well as paragraphs 447 through 576 of the *Master Complaint*, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

18.    As described in the *Master Complaint*, including in paragraphs 577 through 601 of the *Master Complaint*, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight

they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

19.     The information referenced above that Defendants misrepresented, concealed, and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

20.     Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians, and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

21.     Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

22.     Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

23.    Plaintiff was exposed to and justifiably relied upon Defendants' widespread national direct-to-consumer advertising campaigns for Ozempic and Trulicity. In all these materials, Defendants promoted the benefit of weight loss while misrepresenting and omitting the true nature, severity, and duration of gastrointestinal side effects and the serious risks of gastroparesis. This advertising exposure included, but was not limited to, seeing the "Oh, Oh, Oh, Ozempic" television commercials on national television which included a character saying, "no increased risk," as well as advertising campaigns indicating that taking Trulicity can help you "lose up to 10lbs."

24.    These commercials falsely created misleading impressions of the drugs' safety profiles. They included incomplete and misleading statements of safety that tended to assure viewers the drugs were completely safe. Furthermore, while the commercials mentioned common gastrointestinal (GI) side effects like nausea and vomiting, they intentionally minimized the risks by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events they knew or should have known to be associated with Ozempic and Trulicity use.

25.     Plaintiff was prescribed Ozempic which Plaintiff purchased and used. Thereafter, Plaintiff was prescribed Trulicity which he purchased and used. Ultimately both GLP-1 RA Products, Ozempic and Trulicity, were discontinued due to gastrointestinal conditions Plaintiff suffered, including but not limited to abdominal pain, nausea and vomiting, and a small bowel obstruction.

26.    Defendants knew the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements,

promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

27.     By consistently and pervasively understating the risk and overstating the benefits of taking GLP-1 RA Products, Defendants engaged in unfair, deceptive, and/or fraudulent acts in violation of the statute by, among other things:

     a.  Knowingly and intentionally representing that the GLP-1 RA Products have characteristics, uses, or benefits they do not have;

     b.  Knowingly and intentionally representing that the GLP-1 RA Products are of a particular standard, quality, or grade, when they are not;

     c.  Advertising the GLP-1 RA Products with intent not to sell them as advertised;

     d.  Failing to disclose information concerning the GLP-1 RA Products which was known at the time of the transaction with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

     e.  Breaching an express warranty;

     f.  Breaching an implied warranty; and

     g.  Performing an unconscionable action or course of action.

Tex. Bus. & Com. Code Ann. § 17.46(a); § 17.46(b)(5), (7), (9), (24); § 17.50(a).

28.     In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

29.    Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

30.    Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

31.    As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations and omissions.  Defendants expected or should have expected reasonable consumers to rely on these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

32.    Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

33.    The actions and omissions of Defendants are uncured or incurable.

34.    As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

35.    As a producing cause of Defendants' unlawful acts, Mr. Cortez purchased and used the GLP-1 RA Product and suffered injuries including abdominal pain, nausea and vomiting, dehydration, acute kidney injury, gastroesophageal reflux disease, bowel obstruction, and economic loss as set forth in paragraphs 16 to 18 in the Short Form Complaint.

36.     Tex. Bus. & Com. Code Ann. Under Tex. Bus. & Com. Code Ann. § 17.50(a) authorizes a consumer to maintain an action where false, misleading, or deceptive practices enumerated under § 17.46(b) breaches of warranty, unconscionable acts, or acts in violation of the Insurance Code constitute a producing cause of economic damages or damages for mental anguish.

37.     Tex. Bus. & Com. Code Ann. Under Tex. Bus. & Com. Code Ann. § 17.5 (b), a prevailing consumer may recover economic damages, and where the defendant acted knowingly or intentionally, damages for mental anguish and up to three times economic and mental anguish damages. Additional relief may include injunctive relief, restoration of money or property, and any other property, and any other orders the court deems proper.

38.     Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.

39.     To the extent that any pre-suit notice was required, Plaintiff has complied or substantially complied with all applicable notice requirements or is otherwise excused from compliance for this proceeding. Defendants had notice of their violations for years including lawsuits dating back to 2023. In response, Defendants refused to acknowledge and cure the violations alleged herein in a manner that would compensate Plaintiff for the losses Plaintiff has suffered as a result of the misconduct alleged herein. Therefore, any additional notice would be futile.